#### 25340. HARRIS et al. v. EAST LAKE PROPERTIES, LTD. et al.

ARGUED JULY 15, 1969—DECIDED SEPTEMBER 9, 1969.

*Arnall, Golden & Gregory, Elliott H. Levitas, Cleburne E. Gregory, Jr.,* for appellants.

*Jones, Bird & Howell, Eugene Branch, Jule W. Felton, Jr., Paul Anderson,* for appellees.

GRICE, Justice. This suit was brought by J. Robin Harris and others, as minority stockholders of the Atlanta Athletic Club, against that club and its directors, East Lake Properties, Ltd., and its general partners, and the Atlanta Federal Savings & Loan Association. Filed in the Superior Court of DeKalb County, the suit sought to set aside and enjoin the sale by the club to the partnership of property known as the "East Lake Country Club," on the ground that the sale was not authorized by the requisite vote of stockholders as provided by law. The plaintiffs also sought an interlocutory injunction against any action altering or affecting the use, ownership and disposition of such property.

The trial court found in favor of the defendants, denying the plaintiffs' motions for interlocutory injunction and summary judgment and granting the defendants' motion for summary judgment. The plaintiffs appealed and enumerate these judgments as error.

All parties have agreed and stipulated that the sole, controlling issue for our decision is whether the sale by the Atlanta Athletic Club of its East Lake Country Club property was a sale of property essential to the corporate business of the club within the meaning of *Code Ann.* § 22-1870 (Ga. L. 1937-38, Ex. Sess., pp. 214, 241). The Georgia Business Corporation Code (Ga. L. 1968, pp. 565, 566) is not involved here.

The facts, as shown by the pleadings, exhibits, affidavits, oral and documentary evidence, and stipulations of the parties, are not in dispute. They are substantially the following.

The Atlanta Athletic Club, sometimes hereinafter referred to as "the club," was chartered in Georgia in 1898 as a non-profit corporation without capital stock. Its charter stated: "The object of this corporation is not pecuniary gain, but the formation of a social club, the special purpose of which is preparing

and maintaining a gymnasium and enjoying physical exercise." Both a constitution and bylaws were authorized.

The first constitution of the club was adopted sometime prior to 1914, and "Rules and Regulations" are also a part of its government.

By charter amendment in 1931 the club was authorized to issue 1,500 shares of capital stock to "represent the ownership of the net assets of said club upon liquidation." At the time this move was proposed the president of the club referred to the "Equities" of the club members represented by the City Club property and the East Lake Country Club property as the equities to be represented by the shares. The club has continued to be a stock corporation. By subsequent charter amendments and renewals the authorized capital stock is now 2,500 shares.

From time to time the nature and location of the club's facilities have varied, the present City Club being its third location.

In furtherance of its corporate purposes, the Club purchased property in DeKalb County in 1907, improved it and in 1908 opened the East Lake Country Club for the use of its members. This country club was owned by the Atlanta Athletic Club and used as such by its members until the sale on April 9, 1968, which is the subject of this litigation. The East Lake Country Club and the City Club were the only facilities of the Club from 1908 until 1957.

For 61 years the East Lake Country Club has furnished the country club facilities for the Atlanta Athletic Club. While for the last two years golf has also been available at River Bend, at the time of the sale East Lake was the only country club house and complete country club owned by the Atlanta Athletic Club. It had swimming, tennis, dining, an 18-hole golf course, a lake for fishing and boating, and similar accommodations. From 1928 until 1965 there were two 18-hole golf courses there.

The East Lake Country Club is located approximately 10 miles east of downtown Atlanta, much closer to it and the City Club than River Bend is.

Numerous athletic, recreational and social events commonly associated with a country club have occurred at East Lake Country Club, and it has been used by thousands of the Atlanta

Athletic Club's stockholders, members and their families.

East Lake was the home course of Bobby Jones, Alexa Stirling and Charlie Yates, internationally famous golfers, and has been the scene of the British-American Ryder Cup matches and other widely publicized matches and tournaments. In the world of golf East Lake became so important in the minds of the club's officers and directors that it was referred to by them as a "golf shrine." It was also considered sufficiently important by the club's directors in January 1965 to make plans whereby "the Atlanta Athletic Club could continue to own the East Lake No. 1 course and the club house perpetually."

In 1957 the club acquired and began to operate a yacht club facility on Lake Lanier.

In 1964 it purchased property in north Fulton County which it developed as "River Bend." The golf course there opened in May 1967, but the club house has not yet been completed.

The constitution of the club provides that it can be amended by a majority vote of the members at any club meeting after notice of the proposed change has been posted in the club house 30 days before the meeting. In 1948 its constitution was amended to provide: "This club shall be known as the Atlanta Athletic Club. It shall consist of a downtown club house known as the city club and a country club house known as the East Lake Country Club." This provision remained unchanged until February 1967, when "the Lanier Yacht Club and a country club house known as River Bend Country Club" were added to the designation of the properties of the club.

The 1967 yearbook of the club contains a copy of the constitution, photographs of the facilities, a brief history of the club, and a description of notable achievements such as golf championships and the British-American Ryder Cup matches at East Lake. The cover displays the emblem of the club, showing the East Lake Country Club to be one of the elements of its symbol.

From time to time prior to 1961 there was concern among the membership and directors of the club over the geographic movement of its membership to the north side of DeKalb and Fulton Counties. The club had a study made which confirmed this resi-

dential shift and identified a general area considered suitable for future club development. Pursuant to this information the club in 1964 purchased a 600-acre tract along the Chattahoochee River in north Fulton County known as the "River Bend" property.

In 1965 a meeting of the stockholders of the club was held to consider a recommendation by its directors that the East Lake No. 2 golf course be sold. This was an 18-hole course a short distance away from the main East Lake property which was also called "East Lake No. 1." East Lake No. 2 was less valuable and desirable as a country club than the main East Lake property, with its clubhouse and other facilities. The notice for this meeting stated that the stockholders were being called upon to approve the recommendation of the directors, and to authorize them to proceed with the sale. The vote was 975 in favor of the sale and 392 against it.

At this meeting the stockholders were told that the proceeds of that sale would be used in part to upgrade the facilities at East Lake No. 1 and to enable it to be perpetually maintained by the club. The directors declared that "all of us are committed to keep East Lake No. 1 golf course as one of America's greatest golf courses and as a golf shrine in the finest tradition." The stockholders were also told that part of the proceeds would be used to construct a new golf course in north Fulton County on the River Bend property, and that "having a northside golf course as well as the East Lake No. 1 course under the plan that is now presented . . . is the best way to fairly recognize and fulfill the wishes and best interest of all of our members."

During early 1967 the Atlanta Athletic Club commenced a membership drive and as part of this campaign the East Lake Country Club and its facilities were held out as an inducement to prospective members. However, patronage of East Lake continued to decline and the cost of development of River Bend exceeded the original estimates. While East Lake had never operated at a profit from its revenues, neither had any other division of the Atlanta Athletic Club with the exception of the Lake Lanier Yacht Club. Operating losses were made up by dues and initiation fees. However, the rate of operating loss

of East Lake was less than that of other divisions of the club. Also, the percentage of dues allocable to make up these losses at East Lake was disproportionately low as compared to the percentage of the club operation represented by East Lake.

The directors concluded that the Atlanta Athletic Club could not afford to operate two country clubs without an increase in dues. Therefore, in the summer of 1967 they determined that it was in the best interest of the club to sell the East Lake property and to concentrate on the development of River Bend.

At a meeting of the directors in 1968 a proposal was considered and approved, and steps were initiated to conclude the sale of the property to the defendant partnership. In addition to the land and personal property involved, the sale also contemplated the use of the name "East Lake Country Club" by the partnership.

The actual sale was postponed because the directors were not inclined to complete it unless the Atlanta Athletic Club membership approved since there "was a commitment that the club had made to its membership or stockholders." The directors took the position that majority stockholder approval of the sale was not required, and sought only expression of views on the desirability of the sale. Under date of March 4, 1968, notices were mailed to the stockholders of a meeting to be held on April 2, 1968, to "consider the sale." The notice gave detailed information but did not contain any proposal to amend the constitution.

At the meeting only stockholders were permitted to vote. The result was 908 shares for and 544 shares against the sale. The number voting in favor was less than a majority of the shares outstanding.

Despite earnest efforts of the plaintiffs to obtain redress through the directors of the club, the latter sold the East Lake Country Club property on April 9, 1968, to the defendant partnership. At that time it consisted of 165 acres with 18 holes of golf and comprised 25% to 35% in value of the assets of the Atlanta Athletic Club.

Lastly, the parties here agree that the sale of the East Lake property was not a routine sale of corporate property and that it was very important property of the club.

We proceed now to determine the legal consequences of the foregoing facts.

1. The pertinent provision of *Code Ann.* § 22-1870 (Ga. L. 1937-38, Ex. Sess., pp. 214, 241) is that "Every corporation may, by action taken at any meeting of its board of directors, sell, lease, or exchange all of its property and assets, including its good will and its corporate franchise or *any property* or assets *essential to* its corporate business upon such terms and conditions as its board of directors deem expedient *when and as authorized by the affirmative vote of stockholders* of record holding stock in the corporation entitling them to exercise at least *a majority* of the voting power. . ." (Emphasis supplied.)

The instant case is the first in which this section has been applied or construed by the appellate courts of this state. Decisions of other jurisdictions, relied upon by the parties on the issue of authority for the instant sale, are materially different on their facts and hence will not be dealt with here.

We have concluded that the sale under consideration did not involve property or assets essential to the corporate business of the Atlanta Athletic Club within the purview of *Code Ann.* § 22-1870, supra, and that therefore the sale did not require a majority vote of the shares of stock.

At the outset we are mindful that "essential" is synonymous with "necessary" and "indispensable." Webster's International Dictionary, 2d Ed., p. 777; 15 Words and Phrases, Perm. Ed., p. 245.

We regard as decisive the language of the Atlanta Athletic Club's charter, declaring the object and purpose of the corporation as "the formation of a social club, the specific purpose of which is preparing and maintaining a gymnasium and enjoying physical exercise." This is its "corporate business" as contemplated by *Code Ann.* § 22-1870, supra.

It should be noted that nowhere in the club's charter is there any requirement that the object and purpose be carried out at any one or more particular location or locations. In this connection, the City Club has been operated at three different places.

The sale of the East Lake property was, in our view, a step taken toward a partial relocation of the club's facilities. This was because of the shift in residence of its membership to the northern parts of Fulton and DeKalb Counties. This shift, the club's board of directors determined, was the major cause of the continued decline in patronage of the East Lake property, despite efforts to improve it from proceeds of the previous sale of the East Lake No. 2 golf course.

In view of this decline and other factors bearing adversely upon the club's financial condition, the directors determined that it was in the best interest of the Atlanta Athletic Club to sell the remaining East Lake property and to concentrate upon the 600-acre tract at River Bend, already under development. Since its acquisition, 27 holes of golf have been established at River Bend, contrasted with 18 at East Lake No. 1. A club house is under construction, and upon its completion the asset value of the Atlanta Athletic Club will be greater than before the East Lake sale now under review.

There is nothing in the Atlanta Athletic Club's 1967 constitution showing any consensus of the stockholders that East Lake was a property essential to the operation of the club. None results from the provision that the Atlanta Athletic Club "shall consist of a downtown club house known as the City Club, a country club house known as the East Lake Country Club, the Lanier Yacht Club, and a country club house known as River Bend." This provision merely lists the facilities of the Atlanta Athletic Club as they existed at the time of the 1967 amendment to the constitution and as contemplated by the then forthcoming opening of River Bend. That this provision is only descriptive is also shown by the fact that the Lanier Yacht Club, purchased in 1957, then became an integral part of the Atlanta Athletic Club and continued as such for 10 years before it was mentioned in the 1967 constitution. This result is also manifest by the fact that even though River Bend was not then open, it was listed in that constitution. Nothing in this language indicates that the stockholders, by adopting the amendment, deemed East Lake as essential, that is, as necessary or indispensable, to the furtherance of the Atlanta Athletic Club charter object and purpose.

For the same reason, no such inference can be drawn from the emblem showing the East Lake Country Club as one of the elements of the Atlanta Athletic Club's symbol, as displayed on the cover of its 1967 yearbook.

Finally, on the question of essentiality, the history and rich tradition of East Lake, from its athletic, recreational and social events and use by countless patrons, do not render East Lake essential to the club's corporate business.

With the relocation of its country club, the Atlanta Athletic Club's corporate business as stated in its charter continues with expanded and improved facilities.

For the above reasons, the trial court properly denied the appellants' motion for summary judgment and correctly granted the appellees' motion for summary judgment.

2. In view of the foregoing, the trial judge did not abuse his discretion in denying the appellants' motion for interlocutory injunction.

*Judgments affirmed. All the Justices concur.*